UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA MACPHERSON-POMEROY,<br><br>Plaintiff,<br><br>v.<br><br>NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>Defendant. | No. 1:20-cv-00092-DAD-BAM<br><br>ORDER DENYING THIRD-PARTY DEFENDANT DEBANEE MACPHERSON UDALL'S MOTION FOR A CONTINUANCE AND APPOINTMENT OF COUNSEL AND GRANTING PLAINTIFF BARBARA MACPHERSON-POMEROY'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. Nos. 76, 86, 99) |
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>Counter Claimant,<br><br>v.<br><br>BARBARA MACPHERSON-POMEROY,<br><br>Counter Defendant. | |
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>DEBANEE MACPHERSON UDALL and MELANIE RODRIGUEZ,<br><br>Third-Party Defendants. | |

1

Before the court is plaintiff Barbara MacPherson-Pomeroy's unopposed motion for summary judgment as to defendant North American Company for Life and Health Insurance's ("North American") counter claim and third-party complaint for interpleader. (Doc. Nos. 76, 14.) In connection with plaintiff's pending motion for summary judgment, third-party defendant Debanee MacPherson Udall has moved to (i) continue adjudication of plaintiff's motion for summary judgment, and (ii) appoint an attorney to represent her in this case, including for purposes of opposing plaintiff's pending motion. (Doc. Nos. 86, 92.) Plaintiff's pending motion for summary judgment was taken under submission on the papers (Doc. No. 77) and the court now also takes Debanee MacPherson Udall's motion for a continuance and for appointment of counsel under submission on the papers in accordance with its Standing Order in Light of Judicial Emergency in the Eastern District of California. For the reasons discussed below, the court will deny Debanee MacPherson Udall's motion for a continuance and appointment of counsel and grant plaintiff's motion for summary judgment.[1]

**BACKGROUND**

**A.    Factual Background[2]**

This matter arises from the death of plaintiff Barbara MacPherson-Pomeroy's husband, Casey MacPherson-Pomeroy, who held a life insurance policy in the amount of $1,500,000 purchased from defendant North American.

---

[1] The undersigned apologizes for the excessive delay in the issuance of this order. This court's overwhelming caseload has been well publicized and the long-standing lack of judicial resources in this district long-ago reached crisis proportion. That situation has now been partially addressed by the U.S. Senate's confirmation of a district judge for one of this court's vacancies on December 17, 2021. Nonetheless, for over twenty-two months the undersigned was left presiding over approximately 1,300 civil cases and criminal matters involving 735 defendants. That situation resulted in the court not being able to issue orders in submitted civil matters within an acceptable period of time and continues even now as the undersigned works through the predictable backlog. This has been frustrating to the court, which fully realizes how incredibly frustrating it is to the parties and their counsel.

[2] The facts in this section are undisputed because plaintiff's motion for summary judgment is unopposed. *See* Fed. R. Civ. P. 56(e) (stating where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

2

In August 2018, Barbara and Casey moved to the Island of Anguilla, a British overseas territory in the Caribbean. (Doc. No. 76-2 at ¶¶ 6–7.) While in Anguilla, a group of Casey's childhood friends—Caleb and Carly Guillory and Chuck and Alisha Gros—visited Casey and Barbara to celebrate the new year. (Doc. No. 76-4 at 204.) On the evening of December 30, 2018, the three couples visited an outdoor beach bar. (*Id.*) While walking home from the beach bar, Barbara, Casey, and Caleb each drank from the same plastic cup containing an alcoholic beverage, which had been left unattended immediately before the group left for home. (*Id.* at 204–05; Doc. No. 76-2 at ¶ 8.) Shortly after arriving home, all three became seriously ill. (Doc. No. 76-2 at ¶ 9.) Caleb and Casey died on December 30 and 31, 2018, respectively, while Barbara survived. (*Id.* at ¶ 10.) When plaintiff's motion was filed, no criminal charges had been brought against Barbara or anyone else in the group that attended the beach bar on December 30, 2018. (Doc. No. 76-2 at ¶ 12.) Barbara maintains that she did not kill Casey. (*Id.* at ¶ 22.)

At the time of Casey's death, he held a life insurance policy (Policy No. LB02834040). (*Id.* at ¶ 13; Doc. No. 76-4 at 25–83.) Casey purchased the policy in 2013 from defendant North American and increased its value to $1,500,000 in 2014. (Doc. No. 76-2 at ¶¶ 1–2.) Barbara is the primary beneficiary under the policy, but in July 2018, Casey added Melanie Rodriguez (his niece) and Debanee MacPherson Udall (his sister) as contingent beneficiaries.[3] (*Id.* at ¶¶ 3–4; Doc. No. 76-4 at 204.) There are no other primary or contingent beneficiaries under the life insurance policy. (Doc. No. 76-2 at ¶ 5.) Casey's death was reported to defendant North American in early 2019. (*Id.* at ¶ 14.)

**B.    Procedural Background**

On December 16, 2019, plaintiff filed a complaint in the Fresno County Superior Court against North American for breach of contract and the covenant of good faith and fair dealing. (Doc. No. 1 at 17.) North American removed the action to this federal court on January 17, 2020 based on diversity of citizenship. (Doc. No. 1.)

---

[3] According to the endorsement of the change of beneficiary, "[u]nless otherwise stated, proceeds shall be paid to any Primary Beneficiaries who survive the Insured, but if none survive, proceeds shall be paid to any Contingent Beneficiaries who survive, or if none survive, to the Estate of the Policyowner." (Doc. No. 76-4 at 68–69.)

3

On February 21, 2020, North American filed an answer to plaintiff's complaint along with a counterclaim and third-party complaint for interpleader against plaintiff and contingent beneficiaries Melanie Rodriguez and Debanee MacPherson Udall. (Doc. Nos. 13, 14.) In its interpleader complaint, North American alleges that Barbara, Melanie, and Debanee have adverse claims to Casey's life insurance proceeds, so it cannot "discharge its admitted liability under the Policy without exposing itself to multiple litigation, liability, or both." (Doc. No. 14 at ¶¶ 23–24.) North American also alleges the bases for the purported risk of multiple liability, namely that (i) the Royal Anguilla Police Force and the Anguilla Coroners Court have declined to release "any type of statement or additional information" because the case is still "active"; and (ii) the Anguilla Coroners Court initiated an "inquest" to determine the manner or cause of Casey's death, but that the coroner has not resolved the inquest because plaintiff has refused to testify at that inquest.[4] (*Id.* at ¶¶ 15–21.)

On March 4, 2020, the court granted North American leave to deposit its admitted liability—the $1,500,000—with the registry of the court and the court has received those funds. (Doc. No. 16.)

On April 2, 2020, appearing *in propria persona*, third-party defendant Melanie Rodriguez filed an answer to North American's interpleader complaint stating that "[a]lthough I understand that I am a secondary beneficiary under the life insurance policy at issue, I am not challenging the payment of the policy benefits to the primary beneficiary, Barbara MacPherson-Pomeroy." (Doc. No. 21 at 1.) Since the filing of her answer, Melanie has not appeared at any of the status conferences or other hearings held by the court in this action, nor has she submitted any other filings.

---

[4] According to North American, citing from the Anguilla Coroners' Court website, "the coroner 'must decide whether there are still unresolved or mysterious issues surrounding the death of the deceased' and if 'there are unresolved issues rendering the manner or cause of death unclear or there is any suspicion of foul play, the Coroner may determine that a Coroner's inquest is necessary and will direct that an inquest be so conducted.'" (Doc. No. 14 at ¶ 16.) At the same time, the Anguillan certificate of death attached to the interpleader complaint states that the causes of death were: acute pulmonary oedema and haemorrhage; acute cardia toxicity with cardiac ischaemia; seizures; and hyperthermia. (Doc. No. 14-3.)

On April 21, 2020, at that time appearing through counsel, third-party defendant Debanee MacPherson Udall filed an answer to North American's interpleader complaint. (Doc. No. 22.) In her answer, Debanee "affirmatively alleges," among other things, that

> Barbara MacPherson-Pomeroy is a "person of interest" in the cause of Casey MacPherson-Pomeroy's death and, as such, if the inquest and ongoing police investigation determine his death was a homicide Barbara MacPherson-Pomeroy was probably the perpetrator, either alone or in conjunction with others, and as a result she is not permitted under California law to receive the life insurance proceeds under Probate Code §252. . . .

(Doc. No. 22 at ¶ 23.)

On March 31, 2021, plaintiff filed a motion for summary judgment in her favor on North American's interpleader complaint, wherein she requests that her rights to her deceased husband's life insurance proceeds be summarily adjudicated in her favor. (Doc. No. 76.) Plaintiff's pending motion remains unopposed, but Debanee, who is now proceeding *in propria persona*,[5] has sought to postpone its adjudication on three occasions, two of which requests remain pending before the court. First, on April 20, 2021, the day her brief in opposition to plaintiff's motion for summary judgment was due, Debanee filed a motion to continue the hearing date on plaintiff's motion, which the court granted. (Doc. Nos. 82, 83.) Second, on May 18, 2021, the day Debanee's brief in opposition to plaintiff's motion was again due pursuant to the court's order, she filed the pending motion for another continuance and for appointment of counsel. (Doc. No. 86.) With leave from the court, plaintiff filed an opposition to Debanee's motion. (Doc. Nos. 87, 89, 91.) Third, on May 28, 2021, 10 days after her opposition brief was due, Debanee filed an amended motion for a continuance and appointment of counsel, which plaintiff also opposed. (Doc. Nos. 92, 93.)

On February 15, 2022, plaintiff filed a request for a ruling on her pending motion for summary judgment, arguing that it has been 11 months since that motion had been filed. (Doc. No. 99.) No party filed any response or opposition to plaintiff's request.

/////

---

[5] On February 22, 2021, Debanee's counsel filed a motion to withdraw as her attorney, (Doc. Nos. 61, 63), which the court granted on April 8, 2021. (Doc. No. 79.)

Before proceeding to plaintiff's pending motion for summary judgment, the court will first resolve Debanee's motion for a continuance and appointment of counsel.

**C.      Motion for a Continuance and Appointment of Counsel**

In her pending motion Debanee requests that the court: (i) again continue the hearing on plaintiff's motion for summary judgment, and thus, continue Debanee's deadline to file an opposition brief to plaintiff's motion, and (ii) appoint counsel to represent her, including in filing an opposition to plaintiff's now long-pending summary judgment motion.[6] (Doc. No. 86 at 3) (citing Fed. R. Civ. P. 6(b)).

      1.      <u>Whether to Extend the Deadline for the Filing of an Opposition Brief</u>

Federal Rule of Civil Procedure 6(b) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four-factor equitable test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

Debanee claims she needs additional time to file her opposition to plaintiff's motion for summary judgment because: (i) she is "unschooled in laws" and "has no knowledge and ability to cogently respond and represent herself" and is unable to review and respond to the "enormous amount of documents"; (ii) the court entered a stipulated protective order in this case restricting the ability of a specific private investigator from reviewing discovery, which purportedly makes it

/////

/////

/////

/////

---

[6] Because Debanee's amended motion (Doc. No. 92) requests the same relief as her pending motion (Doc. No. 86) and is largely the same in content, the court will treat them as one motion.

difficult for her to secure counsel;[7] and (iii) multiple attorneys have declined to undertake her representation since her original attorney in this action withdrew. (Doc. No. 86 at 2–3.) Debanee also claims, in her amended motion filed on May 28, 2021, that she was "introduced to potential legal counsel licensed in California willing to represent her in this case," but the prospective counsel had a "spinal neurosurgery" and "remains under medical supervision." (Doc. No. 92 at 5.)

Having considered the showing made in support of this request, the court finds that Debanee has failed to establish "good cause" or "excusable neglect" under Rule 6(b) warranting the granting of a further extension of time for Debanee to file her opposition to plaintiff's pending motion for summary judgment. First, the court already granted Debanee an extension of time to file her opposition back in April 2021. (Doc. Nos. 82, 83.) Moreover, since her pending extension of time request was made, approximately ten months have passed, yet during that time she has still failed to file an opposition to the motion, nor has she secured new counsel to enter an appearance on her behalf in this action. In fact, the ten-month delay that occurred due to this

/////

---

[7] Debanee claims that the protective order is "restricting access of discovery from counsel's licensed investigators and potentially other counsel staff have made obtaining new counsel insurmountable, given imposed restrictions and the number of documents to review." (Doc. No. 86 at 8.) This claim is meritless. Although Debanee does not explain what protected material she seeks to share or how precisely the protective order has obstructed her efforts to secure counsel, the protective order in question (which Debanee's prior counsel stipulated to on her behalf) explicitly permits "[o]utside or inside counsel that have appeared in this action or are actively engaged in the preparation of this action" to review protected material. (Doc. No. 47 at 4–5.) The protective order also provides that protected material can be shared with "[o]ther persons" upon an order from this court or a stipulation of the parties. (*Id.* at 5.) If Debanee was concerned about sharing protected material under the protective order, then she could have sought either a stipulation of the parties or an order from this court or maintained that her prospective counsel was "actively engaged in the preparation of this action." But Debanee has not made any such requests, and thus, it does not appear that the protective order raised an "insurmountable" barriers to Debanee securing new counsel. Finally, to the extent Debanee is concerned about the access of protected materials by "counsel's licensed investigators and potentially other counsel staff," (Doc. No. 86 at 8) the protective order explicitly allows "employees of counsel assisting in the conduct of this action" to review protected material, with the only exception being that it prohibits a specific individual—"T.J. Ward and his associates, affiliates, employees, and agents"—from reviewing protected material, but even T.J. Ward could review protected material upon "further order of the Court." (Doc. No. 47 at 4–5.)

7

court's judicial emergency[8] has already provided Debanee with another lengthy *de facto* extension of time to file her opposition to summary judgment. At the same time, that passage of time has resulted in meaningful prejudice to plaintiff who originally filed her motion for summary judgment now almost a full year ago. Further delay is not warranted under these circumstances where Debanee has had months to act but has failed to do so. Although the court has no reason to doubt that Debanee's request for another extension of time has been made in good faith, the time elapsed is simply too great to delay's resolution of plaintiff's long-pending motion any longer. *See Hakim v. Fed. Ins. Co.*, No. 20-55423, 2021 WL 6101345, at *1 (9th Cir. Dec. 21, 2021) (upholding denial of a request for continuance made by *pro se* litigant to file an opposition to insurance company's summary judgment motion even where the district court had failed to discuss each excusable neglect factor or to consider the prejudice to the *pro se* litigant stemming from the denial of the request);[9] *cf. Ahanchian*, 624 F.3d at 1261 (finding good cause for a one-week extension of time caused by "exceptionally constrained deadline" resulting from local rules).

Accordingly, Debanee's request to once again extend the deadline to file her opposition brief to the pending motion for summary judgment is denied.

2.  Whether to Appoint Counsel

"To start, this court has long held that there is 'no constitutional right to counsel in a civil case.' Unlike in criminal cases that implicate the Sixth Amendment right to counsel, civil litigants who cannot afford counsel are not constitutionally guaranteed the appointment of a lawyer." *Adir Int'l, LLC v. Starr Indem. & Liab. Co.*, 994 F.3d 1032, 1038–39 (9th Cir. 2021) (internal citation omitted), *cert. denied*, __U.S.__, 142 S. Ct. 861 (2022). However, "[i]n proceedings *in forma pauperis*, the district court 'may request an attorney to represent any person unable to afford counsel.'" *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting 28 U.S.C. § 1915(e)(1)).

---

[8] See fn.1, above.

[9] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

In Debanee's pending motion, she requests that this court appoint counsel to represent her in this civil action because she is "unschooled in laws," "has no knowledge and ability to cogently respond and represent herself," and is unable to review and respond to the "enormous amount of documents." (Doc. No. 86 at 2–3.) She also suggests that she is having difficulty retaining counsel because she has been "politely declined" representation. (Doc. No. 92 at 5.)

Here, the court finds that the appointment of counsel is not justified. First, Debanee does not have a constitutional right to counsel in this civil action over life insurance proceeds. Nor does this court have authority under 28 U.S.C. § 1915(e)(1) to request that an attorney represent Debanee because she has never sought to proceed *in forma pauperis* in this action. Debanee does not even claim that she is indigent, only that she has not been able to retain counsel in connection with this case and that she is "unschooled in laws." (Doc. No. 86 at 2–3.) Debanee has not identified a source of authority for the court to grant her motion, nor has she established any legitimate need for the appointed of counsel on her behalf.

Accordingly, Debanee's request that this court appoint counsel to represent her in this civil action will denied.

## LEGAL STANDARD

**A.     Interpleader**

"Interpleader is a procedural device used to resolve conflicting claims to money or property. It enables a person or entity in possession of a tangible *res* or fund of money (the 'stakeholder') to join in a suit two or more 'claimants' asserting mutually exclusive claims to that stake." *Great Wall De Venezuela C.A. v. Interaudi Bank*, 117 F. Supp. 3d 474, 481 (S.D.N.Y. 2015) (quoting Moore's Federal Practice § 22.02[1] (3d ed. 2013)); *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1009 (9th Cir. 2012) ("[I]nterpleader . . . allow[s] a party to file a claim for interpleader if there is a possibility of exposure to double or multiple liability."). "The purpose of interpleader is for the stakeholder to 'protect itself against the problems posed by multiple claimants to a single fund.'" *Mack v. Kuckenmeister*, 619 F.3d 1010, 1024 (9th Cir. 2010). "This includes protecting against the possibility of court-imposed liability to a second claimant where the stakeholder has already voluntarily paid a first claimant. But it also includes limiting

litigation expenses, which is not dependent on the merits of adverse claims, only their existence." *Id.*

When the interpleader procedure is initiated, it typically proceeds in two stages. *Lee*, 688 F.3d at 1009. "In the first stage, the district court decides whether the requirements for [a] rule or statutory interpleader action have been met by determining if there is a single fund at issue and whether there are adverse claimants to that fund." *Id.* "If the district court finds that the interpleader action has been properly brought the district court will then make a determination of the respective rights of the claimants." *Id.* The two stages to an interpleader action need not be bifurcated; "the entire action may be disposed of at one time." *W. Conf. of Teamsters Pension Plan v. Jennings*, No. C-10-03629 EDL, 2011 WL 2609858, at *5 (N.D. Cal. June 6, 2011), *report and recommendation adopted*, No. C 10-03629 PJH, 2011 WL 2609860 (N.D. Cal. July 1, 2011). The second stage of an interpleader action may be adjudicated at summary judgment when there is no material dispute of fact, *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999), and "each claimant has the burden of establishing his or her right to the fund or property by a preponderance of the evidence." *Chase Inv. Servs. Corp. v. L. Offs. of Jon Divens & Assocs., LLC*, 748 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010).

Federal civil procedure allows two mechanisms for invoking interpleader—statutory interpleader under 28 U.S.C. § 1335 and rule interpleader under Rule 22—and their jurisdictional requirements differ. Under statutory interpleader, district courts have original jurisdiction over actions if: (1) the amount in dispute exceeds $500; (2) there are two or more adverse claimants of diverse citizenship; and (3) the plaintiff deposits the money or property in dispute into the registry of the court or posts an adequate bond. *See* 28 U.S.C. § 1335. Statutory interpleader has been "uniformly construed to require only 'minimal diversity,' that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530 (1967). In contrast, rule interpleader under Federal Rule of Civil Procedure 22 is a procedural device only and requires that jurisdiction must be proper under 28 U.S.C. § 1331 or § 1332. *See Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1382 (9th Cir. 1988).

**B.     Motion for Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

11

admissible discovery material in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").

When the non-moving party to a summary judgment motion fails to challenge the facts asserted by the moving party in the manner required by Rule 56(c), the court may: (i) "consider the fact undisputed for purposes of the motion," and (ii) "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3). In addition, if the non-moving party fails to submit an opposition to the motion for summary judgment, the district court is not required to search the record for some genuine dispute of material fact. *See Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029–31 (9th Cir. 2001). "The district court may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Id.* Nonetheless, the moving party must still meet its burden of proof because Rule 56 "prohibit[s] the grant of summary judgment 'by default even if there is a complete failure to respond to the motion.'" *Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013); *see also* Fed. R. Civ. P. 56(e)(3). "In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).

## ANALYSIS

**A.    Whether Interpleader Is Proper**

At the first stage of interpleader, the court must determine whether the procedure's general requirements have been satisfied.[10] Interpleader is proper only if there are adverse claims

---

[10] North American asserts that the court has jurisdiction over this interpleader action under 28 U.S.C. § 1335. (Doc. No. 14 at ¶ 5.) Here, the jurisdictional requirements of statutory interpleader are satisfied because the claimants are all citizens of different states (*id.* at ¶¶ 1–4), the amount in controversy ($1,500,000) far exceeds the $500 minimum, *Lee*, 688 F.3d at 1008 n.1, and North American has deposited the disputed proceeds with the court. (Doc. No. 16); 28 U.S.C. § 1335(a)(2). The court notes that jurisdiction under 28 U.S.C. § 1332 is also satisfied.

against a single fund.  *See Lee*, 688 F.3d at 1009; *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 896 (9th Cir. 2012) ("Interpleader is appropriate where the stakeholder reasonably fears that there may be multiple parties with colorable adverse claims to the stake.").  In determining whether there are adverse claims to a single fund, the stakeholder need only a "good faith belief that there are or may be colorable competing claims to the stake," which "is not an onerous requirement." *Michelman*, 685 F.3d at 894.  The stakeholder also must demonstrate only that the adverse claim—whether it is an actual or potential claim—has a "'minimal threshold level of substantiality.'"  *Id.* at 895.  The interpleader statute is also remedial in nature and should be liberally construed.  *State Farm*, 386 U.S. at 533.

In plaintiff's pending motion for summary judgment, she does not contest the use of interpleader by North American.  (*See* Doc. No. 76-1 at 13–14.)  In fact, plaintiff implies that interpleader was properly invoked by North American because she contends that "there is no dispute that there is a single fund at issue and that Barbara, as primary beneficiary, and Debanee, as one of two secondary beneficiaries, are the only claimants to that fund."  (Doc. No. 76-1 at 14.)  Although no other party has filed an opposition or other response to plaintiff's pending motion, third-party defendants Melanie and Debanee both filed answers to North American's interpleader complaint, neither of which contest the interpleader procedure.  (*See* Doc. Nos. 21, 22.)  In fact, Debanee also implies that interpleader is appropriate because she affirmatively asserts a claim to the insurance proceeds and has prayed for an order that North American "has acted in good faith by interpleading the proceeds" of the life insurance policy at issue.  (Doc. No. 22 at 4–5.)

The court concludes that the general requirements to an interpleader action have been satisfied in this case.  As alleged in the interpleader complaint, North American admits liability to a single fund of $1,500,000 to which plaintiff is the primary beneficiary and Debanee is one of two contingent beneficiaries.[11]  (Doc. Nos. 14 at ¶¶ 7–9, 23–24; 14-1 at 40–41, 44–46; 14-2.)

---

[11] The second contingent beneficiary, third-party defendant Melanie, stated in her answer that she is "not challenging the payment of the policy benefits to the primary beneficiary, Barbara MacPherson-Pomeroy" and "request[s] that the interplead[ed] insurance proceeds be distributed to Barbara MacPherson-Pomeroy."  (Doc. No. 21 at 1–2.)  Accordingly, and in light of that answer, the court will dismiss Melanie's claim to a portion of the life insurance policy's proceeds with prejudice.

North American also has a good faith belief that there is a colorable adverse claim to the single fund because, in answering the interpleader complaint, Debanee has asserted that California Probate Code § 252 could be invoked in connection with Casey's death, which would prevent plaintiff from collecting the single fund and instead entitle Debanee to one-quarter of it.[12]  (Doc. No. 22 at ¶ 23.)  North American further alleges in its interpleader complaint that it has unsuccessfully sought information about Casey's death from the Royal Anguilla Police Force and the Anguilla Coroners Court, but learned that plaintiff has not participated in the investigation and that the investigation was still open while awaiting testimony from plaintiff at the coroner's inquest.  (Doc. No. 14 at ¶¶ 15–21.)  North American impliedly concludes that the uncertainty regarding the incomplete investigation and existence of contingent beneficiaries could possibly implicate California Probate Code § 252 thus warranting the use of the interpleader procedure.  (Doc. No. 14 at ¶¶ 22–23.)  North American's allegations, combined with Debanee's answer affirmatively alleging that California Probate Code § 252 applies here, satisfies the "minimal threshold level of substantiality" that a colorable adverse claim exists to the single fund.  *See United Invs. Life Ins. Co. v. Grant*, 387 F. App'x 683, 686 (9th Cir. 2010) (upholding use of interpleader procedure when insurer "knew enough details about the case by the time it filed a complaint in interpleader to justify its fear of multiple liability," including details suggesting that "if [the primary beneficiary] were determined to have murdered her husband, [the insurer] could remain liable on the life insurance policy even if it had already paid [the primary beneficiary]").[13]

Accordingly, the court finds that the use of the interpleader procedure is appropriate here because North American has satisfied the general requirements of interpleader under 28 U.S.C. § 1335.

/////

---

[12] California Probate Code § 252—known as the "slayer rule"—provides that when a named beneficiary to life insurance proceeds "feloniously and intentionally kills" the person on whose life the policy is issued, the named beneficiary is not entitled to any benefit under the policy and the policy becomes payable as if the named beneficiary predeceased the decedent.

[13] See fn. 9, above.

**B.     Determining the Parties' Rights to the Insurance Proceeds**

The court now turns to the second stage of an interpleader action—determining the rights of plaintiff and Debanee to the life insurance proceeds—which has been raised through plaintiff's motion for summary judgment.

Under California Probate Code § 252,

> [a] named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent.

Cal. Prob. Code § 252; *see also Est. of McGowan*, 35 Cal. App. 3d 611, 615 (1973) ("It is well established in this state that in the event of an intentional killing of the insured by the primary beneficiary, the contingent beneficiaries become entitled to the insurance proceeds."). California Probate Code § 254 provides the mechanism for proving that a beneficiary "feloniously and intentionally" killed the insured:

> In the absence of a final judgment of conviction of felonious and intentional killing, the court may determine by a preponderance of evidence whether the killing was felonious and intentional for purposes of this part. The burden of proof is on the party seeking to establish that the killing was felonious and intentional for the purposes of this part.

Cal. Prob. Code § 254(b); *see also Principal Life Ins. Co. v. Peterson*, 156 Cal. App. 4th 676, 687 (2007) ("[S]ubdivision (b) of Probate Code section 254 placed on the Administrator the burden of proving, by a preponderance of evidence, that appellant feloniously and intentionally killed Laci Peterson. For summary judgment purposes, the Administrator on this interpleader action was thus the functional equivalent of a plaintiff moving for summary judgment.").

In plaintiff's pending motion, she argues that Debanee cannot present any evidence that plaintiff feloniously and intentionally killed Casey "because no such evidence exists." (Doc. No. 76-1 at 15.) Plaintiff argues that Debanee "merely speculates as to the cause of her brother's death" and that her suspicions are based entirely on inadmissible evidence. (*Id.* at 15–16.) Among other things, plaintiff contends that Debanee admitted at her deposition in this action "that

15

she is unaware of any evidence that would support any claim that Barbara feloniously and intentionally killed Casey" and that she is only "suspicious" of plaintiff's involvement in Casey's death. (*Id.* at 20.)

As noted above, Debanee has not offered any evidence or filed any opposition to plaintiff's pending motion for summary judgment.[14]

Having reviewed plaintiff's motion and supporting materials, the court finds that there is no dispute of material fact and plaintiff is entitled to summary judgment in her favor as a matter of law. On the evidence presented on summary judgment, which has been deemed admitted for purposes of this motion under Rule 56(e), the undisputed facts establish that "Barbara did not feloniously and intentionally kill Casey" and that Debanee "has no evidence to support any claim that Barbara feloniously and intentionally killed Casey." (Doc. No. 76-2 at ¶¶ 20–21.) The court

---

[14] Although Debanee did not file an opposition brief, she did include a sworn cover letter to her amended motion for a continuance and appointment of counsel stating that she

> oppose[s] the summary judgment adjudication, as pertinent facts to the case can only be ascertained in lieu of [sic] the conclusion of the inquest in Anguilla. Evidence regarding Casey MacPherson-Pomeroy's death is being held by the coroner's court, including full autopsy reports of all the samples, blood test results from all other parties, police and medical staff testimonies. . . . I would ask the court to postpone the summary judgment adjudication until after the inquest in Anguilla has been completed and adjourned.

(Doc. No. 92 at 1–2.) The court can defer a summary judgment motion when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Here, Debanee's cover letter is insufficient to defer resolution of plaintiff's motion under Rule 56(d) because "[r]eferences in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56[(d)]," which "requires affidavits setting forth the particular facts expected from the movant's discovery." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) ("Failure to comply with the requirements of Rule 56[(d)] is a proper ground for denying discovery and proceeding to summary judgment."). In her cover letter, Debanee does not state the specific facts she hopes to elicit, how those facts are essential in order for her to oppose this summary judgment motion, or how or if she knows the listed evidence even exists. *See Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Nor has she indicated that subpoenas or any other discovery devices have been deployed to attempt to collect the purported evidence. *See Brae*, 790 F.2d at 1443 ("[T]he [Rule 56(d)] movant cannot complain if it fails to pursue discovery diligently before summary judgment."). Accordingly, to the extent Debanee's cover letter could be construed as a request to defer the pending motion under Rule 56(d), it will be denied.

has reviewed the citations to the factual record supporting these material facts and finds that there is adequate support for them. These undisputed material facts conclusively negate an essential element that Debanee must establish under California Probate Code § 252—that plaintiff feloniously and intentionally killed Casey—and thus, Debanee cannot satisfy her burden. Finally, plaintiff has carried her own burden of establishing that she is entitled to the life insurance policy proceeds because the life insurance policy (Policy No. LB02834040) states that plaintiff is the primary beneficiary, and the insured has died. (*See* Doc. No. 76-4 at 25–83.)

Accordingly, the court will grant plaintiff's motion for summary judgment entitling her to the entirety of Casey's life insurance policy proceeds. Debanee's claim to a portion of the proceeds is dismissed with prejudice.[15]

**CONCLUSION**

For the reasons explained above:

1. Third-party defendant Debanee MacPherson Udall's motion for continuance and appointment of counsel (Doc. No. 86) is denied;

2. Plaintiff Barbara MacPherson-Pomeroy's motion for summary judgment (Doc. No. 76) is granted;

3. Plaintiff Barbara MacPherson-Pomeroy's request for a ruling on her motion for summary judgment (Doc. No. 99) is denied as having been rendered moot by this order;

4. Third-party defendant Debanee MacPherson Udall's claim to a portion of life insurance proceeds under Policy No. LB02834040 is dismissed with prejudice;

/////

---

[15] North American is not dismissed from this suit because plaintiff's two claims asserted in her original complaint—breach of contract and breach of the covenant of good faith and fair dealing—are still pending. (*See* Doc. No. 1 at 17–26.) Moreover, although the court is not inviting unnecessary motion practice, the undersigned clarifies that this order has only determined the rights to the interpleaded fund and does not address further forms of relief prayed for in North American's interpleader complaint, such as a discharge from liability, injunctive relief enjoining suits in other courts over the interpleaded funds, or an award of costs and attorney's fees. (Doc. No. 14 at 5–6.)

    5.      Third-party defendant Melanie Rodriguez's claim to a portion of life insurance proceeds under Policy No. LB02834040 is dismissed with prejudice;

    6.      The Clerk of the Court is directed to terminate third-party defendant Debanee MacPherson Udall from this action;

    7.      The Clerk of the Court is directed to terminate third-party defendant Melanie Rodriguez from this action;

    8.      The Clerk of the Court is directed to enter judgment in favor of plaintiff Barbara MacPherson-Pomeroy that she is the sole beneficiary entitled to the entirety of the life insurance proceeds under Policy No. LB02834040 and that contingent beneficiaries Melanie Rodriguez and Debanee MacPherson Udall are not entitled to any proceeds under Policy No. LB02834040; and

    9.      The remaining parties are directed to contact Courtroom Deputy Mamie Hernandez at (559) 499-5652 or MHernandez@caed.uscourts.gov, within fourteen days of service of this order regarding the scheduling of the Final Pretrial Conference and Jury Trial dates in this action or, if the remaining parties agree that it would be more appropriate, a status conference to discuss any further proceedings in this action.

IT IS SO ORDERED.

Dated: **April 7, 2022**

                                              UNITED STATES DISTRICT JUDGE