1

2

3

4

5

6

7

8

9                            UNITED STATES DISTRICT COURT

10                           EASTERN DISTRICT OF CALIFORNIA

11

12    BARBARA MACPHERSON-POMEROY,              No.  1:20-cv-00092-KES-BAM

13                    Plaintiff,

14          v.                                 ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANT'S
15    NORTH AMERICAN COMPANY FOR               MOTION FOR SUMMARY JUDGMENT
      LIFE AND HEALTH INSURANCE, an
16    Iowa corporation; and DOES 1 through     Doc. 134
      100,
17
                      Defendants.
18

19

20          This action concerns plaintiff Barbara MacPherson-Pomeroy's claims for breach of

21    contract and breach of the implied covenant of good faith and fair dealing against defendant

22    North American Company for Life and Health Insurance ("North American").  Doc. 1.

23    MacPherson-Pomeroy alleges that, following her submission of a claim as the beneficiary on her

24    late husband's life insurance policy, North American failed in its duty to reasonably investigate,

25    evaluate, and determine coverage for the claim, and failed to abide by the contractual terms of

26    the policy, by unreasonably delaying in paying her the insurance proceeds.  *See generally id.*

27    After MacPherson-Pomeroy filed this action in December 2019, North American filed a

28    counterclaim and third-party complaint for interpleader on February 21, 2020.  Doc. 14.  The

                                              1

1  interpleader claim was previously resolved by the Court and the insurance proceeds were ordered

2  paid to MacPherson-Pomeroy. *See* Docs. 149, 154. North American moved for summary

3  judgment on MacPherson-Pomeroy's claims for breach of contract and breach of the covenant of

4  good faith and fair dealing. Doc. 134. North American argues that its interpleading of the

5  insurance funds absolves it of liability on MacPherson-Pomeroy's claims. *See generally id.* For

6  the reasons stated below, North American's motion is granted in part and denied in part.

7  **I.      Relevant Facts and Procedural History**

8          The record, viewed in the light most favorable to MacPherson-Pomeroy, shows the

9  following:  In or about June 2013, Casey MacPherson-Pomeroy ("Casey"), MacPherson-

10  Pomeroy's husband, purchased a life insurance policy from North American, with a face value

11  of $1,000,000 and a policy effective date of July 11, 2013 ("Policy").[1]  Plaintiff's Opposition to

12  Defendant's Statement of Undisputed Material Facts, Doc. 137-1 ("SUMF") No. 1.

13  MacPherson-Pomeroy was the primary beneficiary under the Policy. *Id.* No. 2. In May 2014,

14  Casey increased the face value of the Policy to $1,500,000 effective July 11, 2014. *Id.* No. 3.

15  On July 17, 2018, Casey added Melanie Rodriguez and Debanee MacPherson-Udall as

16  contingent beneficiaries under the Policy, with a 75 percent and 25 percent interest, respectively.

17  *Id.* No. 4. Casey and MacPherson-Pomeroy moved to the island of Anguilla in August 2018. *Id.*

18  No. 6.

19          On December 30, 2018, Casey, MacPherson-Pomeroy, and four friends who were

20  visiting them from the United States walked from the MacPherson-Pomeroys' apartment to an

21  outdoor beach bar. *Id.* Nos. 7–8. While walking home from the beach bar, Casey, MacPherson-

22  Pomeroy, and one of their friends each drank an alcoholic drink from the same plastic cup,

23  which had earlier been left unattended for a short period of time. *Id.* No. 9. Shortly after

24  arriving home, all three became seriously ill from the drink and they were hospitalized for

25  medical treatment. *Id.* No. 10. MacPherson-Pomeroy recovered, but she learned several days

26  later that Casey and their friend had died. *Id.* No. 11. Casey died in Anguilla on December 31,

---

27

28  [1] To avoid confusion, this Order refers to Casey MacPherson-Pomeroy as "Casey," and to plaintiff Barbara MacPherson-Pomeroy as "MacPherson-Pomeroy."

1    2018.  *Id.* No. 12.  The Policy was in effect at the time of Casey's death.  *Id.* No. 13.

2         MacPherson-Pomeroy and the three other friends who were also at the bar that evening

3    were detained and questioned by the Royal Anguilla Police Force for two to three days following

4    Casey's death and were then released.  Doc. 137-4 at 61; SUMF No. 14; Plaintiff's Additional

5    Material Facts, Doc. 137-3 ("AMF") No. 2.  Neither MacPherson-Pomeroy nor the other three

6    individuals were ever identified as suspects, or arrested or charged, in connection with the death.

7         On January 4, 2019, North American was notified of Casey's death.  AMF No. 7.  That

8    same day, it sent a letter to MacPherson-Pomeroy requesting that she provide a death certificate

9    and complete a claimant's statement.  SUMF No. 15.  On January 18, 2019, North American

10   received a proof of death signed by MacPherson-Pomeroy along with a death certificate for

11   Casey.  Doc. 134-4 at 176–79; *id.* No. 16.  After North American received the death certificate,

12   which reflected that Casey had died outside the United States, it classified the claims

13   investigation as an "escalated claim" because he died in a foreign country.  SUMF No. 17.

14        North American then requested and received additional documents from MacPherson-

15   Pomeroy, including an original death certificate, the complete Proof of Death Claimant's

16   Statement, a completed Foreign Death Questionnaire, and a Report of Death of American

17   Citizen Abroad.  *Id.* No. 18; AMF No. 10.  Casey's death certificate listed his cause of death as

18   "A. acute pulmonary edema and hemorrhage, B. acute cardiac toxicity with cardiac ischemia, C.

19   seizures, D. hyperthermia," with no manner of death listed.  *Id.* No. 19.  On March 13, 2019,

20   Claims Specialist Brad Schaefer sent the claim to his manager for escalated review, pursuant to

21   North American's Escalated Claims Review manual.  *Id.* Nos. 20-21.  On April 2, 2019, North

22   American sent a letter to MacPherson-Pomeroy acknowledging receipt of the documents that she

23   provided in February 2019 and requesting additional documentation from the Anguilla hospital

24   where Casey was treated.  *Id.* No. 22.  North American did not initially receive the information

25   from the hospital.  Doc. 134-4 at 230.

26        On May 9, 2019, in-house counsel for North American contacted a third-party

27   investigation entity, Diligence International Group ("Diligence"), for a quote estimate for a

28   potential investigation by Diligence into Casey's death.  *Id.* No. 23.  On May 13, 2019, North

1    American retained Diligence to investigate Casey's death. Doc. 134-4 at 232. Between May

2    and July 2019, North American and Diligence regularly communicated via email on the status of

3    Diligence's investigation.

4         On July 12, 2019, Diligence issued its death verification report, confirming that Casey's

5    death was due to the reasons stated in his death certificate.[2] SUMF No. 27; Doc. 137-4 at 138.

6    Diligence continued to communicate with Anguilla authorities to obtain further information on

7    the Anguilla investigation into Casey's death. *Id.* In late July 2019, Diligence learned that the

8    Anguilla coroner had initiated an inquest into Casey's death and that the coroner was seeking to

9    have MacPherson-Pomeroy and others testify. Doc. 134-4 at 239. MacPherson-Pomeroy did

10   not return to Anguilla to participate in the inquest hearing held on September 25, 2019. *See*

11   SUMF Nos. 30, 32. The Anguilla coroner never identified MacPherson-Pomeroy as a suspect.

12   AMF No. 6. Thereafter, from August to December 2019, Diligence sent updates to North

13   American stating that the coroner's inquiry remained open and that MacPherson-Pomeroy had

14   not accepted a subpoena to attend the inquest in Anguilla. Doc. 134-4 at 241–51.

15        From July 2019 through December 2019, North American sent monthly updates to

16   MacPherson-Pomeroy stating that her claim was still under review. *See id.* at 158–64. In

17   August 2019, MacPherson-Pomeroy retained counsel to communicate with North American and

18   request a more substantive update on the status of her claim. AMF No. 18. In September 2019,

19   North American responded to MacPherson-Pomeroy's counsel that it was unable to provide the

20   requested information "without a court order." *Id.* No. 19. Despite an additional request by

21   MacPherson-Pomeroy's counsel in November 2019, North American did not provide any further

22   information regarding the status of the claim, other than that the review remained ongoing. *Id.*

23   Nos. 29–30. North American asserts that it kept the claim open because it had not received a

24   "satisfactory statement" that MacPherson-Pomeroy was not involved with Casey's death.

25   ───────────────

26   [2] Neither party provides a copy of Diligence's death verification report. However, MacPherson-
     Pomeroy attaches an expert report including an event log which quotes a portion of the death

27   verification report as stating that Casey "appears to have passed away due to acute pulmonary
     edema and hemorrhage, acute cardiac toxicity with cardiac ischemia, seizures and hyperthermia

28   on December 31, 2018 . . . [Casey] seems to have passed away as a result of drug use." *See* Doc.
     137-4 at 138.

1   SUMF No. 34.  However, MacPherson-Pomeroy was never identified as a suspect in connection

2   with Casey's death, and she was never arrested.  AMF Nos. 5–6.  No charges were ever brought

3   against MacPherson-Pomeroy or anyone else who was in the MacPherson-Pomeroys' group on

4   the evening in question.  *Id.* No. 6.

5        MacPherson-Pomeroy filed the present action in state court on December 16, 2019.  *Id.*

6   No. 39.  North American removed the action to this Court on January 17, 2020.  Doc. 1.  North

7   American filed a counterclaim and third-party complaint for interpleader on February 21, 2020.

8   Doc. 14.  North American brought the third-party complaint claim against Melanie Rodriguez

9   and Debanee MacPherson Udall, the contingent beneficiaries on Casey's Policy.[3]  *Id.*  On

10  March 31, 2021, MacPherson-Pomeroy filed an unopposed motion for summary judgment as to

11  North American's third-party complaint for interpleader.  Doc. 76.  MacPherson-Pomeroy's

12  motion argued that there was no evidence that MacPherson-Pomeroy had killed Casey, which

13  would have precluded MacPherson-Pomeroy from having any claim to Casey's life insurance

14  proceeds.  *Id.* at 11; *see also* Cal. Prob. Code § 252.  On April 8, 2022, the Court granted

15  MacPherson-Pomeroy's motion, finding that (1) because it had a good faith belief that there was

16  a colorable adverse claim to the Policy, North American had satisfied the general requirements

17  of an interpleader action, and (2) MacPherson-Pomeroy was entitled to the entirety of Casey's

18  life insurance policy proceeds.  *See generally* Doc. 100.  On November 11, 2022, the Court

19  disbursed the interplead funds to MacPherson-Pomeroy, less the sum of attorney's fees at stake

20  in connection with the interpleader action.  Doc. 150.  On September 5, 2023, the Court awarded

21  some of the remaining deposited funds to North American as an award of attorney's fees; it

22  awarded the remainder to MacPherson-Pomeroy.  Doc. 154.  On October 6, 2023, the Court

23  disbursed the awarded funds.  Doc. 155.

24       Remaining before the Court is North American's motion for summary judgment, filed

25  August 11, 2022, as to MacPherson-Pomeroy's claims against it for breach of contract and

26

27  [3] In her answer to the third-party complaint, Melanie Rodriguez confirmed that she was not
    challenging the payment of policy benefits to MacPherson-Pomeroy.  Doc. 21 at 1.

28

1    breach of the covenant of good faith and fair dealing.  Doc. 134.  MacPherson-Pomeroy filed an

2    opposition and North American filed a reply.  Docs. 137, 143.  The Court held oral argument on

3    June 16, 2025.  Doc. 164.

**II.    Legal Standard**

5          Summary judgment is appropriate if "there is no genuine dispute as to any material fact

6    and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is

7    "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

8    *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the

9    outcome of the suit under the governing law."  *Id.*  The parties must cite "particular parts of

10   materials in the record."  Fed. R. Civ. P. 56(c)(1).  The Court then views the record in the light

11   most favorable to the nonmoving party and draws reasonable inferences in that party's favor.

12   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).  However, the

13   nonmoving party's version of the facts need not be credited if it is blatantly contradicted by the

14   evidence.  *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018).  The "purpose of

15   summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

16   there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations omitted).

17          "A party seeking summary judgment bears the initial burden of informing the court of the

18   basis for its motion and of identifying those portions of the pleadings and discovery responses

19   that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless,*

20   *Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

21   (1986)).  If "the moving party will have the burden of proof on an issue at trial, the movant must

22   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

23   party."  *Soremekun*, 509 F.3d at 984.

24          If the moving party meets its initial burden, the burden shifts to the nonmoving party to

25   produce evidence supporting its claims or defenses and "establish that there is a genuine issue of

26   material fact."  *Matsushita*, 475 U.S. at 585.  The nonmoving party "must do more than simply

27   show that there is some metaphysical doubt as to the material facts."  *Id.* at 586 (citation

28   omitted).  "The mere existence of a scintilla of evidence in support of the [nonmovant's]

1    position" is insufficient to survive summary judgment. *Anderson*, 477 U.S. at 252.

2           In the endeavor to establish the existence of a factual dispute, the nonmoving party need

3    not establish a material issue of fact conclusively in its favor. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

4    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). It is sufficient that "the claimed factual

5    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth

6    at trial." *Anderson*, 477 U.S. at 252 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391

7    U.S. 253, 289 (1968)). However, "[w]hen opposing parties tell two different stories, one of

8    which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

9    should not adopt that version of the facts for purposes of ruling on a motion for summary

10   judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "If the nonmoving party fails to produce

11   enough evidence to create a genuine issue of material fact, the moving party wins the motion for

12   summary judgment. But if the nonmoving party produces enough evidence to create a genuine

13   issue of material fact, the nonmoving party defeats the motion." *Nissan Fire & Marine Ins. Co.*

14   *v. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) (citing *Celotex*, 477 U.S. at 322).

15   **III.    Discussion and Analysis**

16      **A. Evidentiary Objections**

17          Both parties raise hearsay objections to the evidence cited in the moving papers. *See*

18   *generally* Docs. 137-2, 145. "[A]t the summary judgment stage, we do not focus on the

19   admissibility of the evidence's form. We instead focus on the admissibility of its contents."

20   *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). That is, though such

21   objections could prove cognizable at trial, only the admissibility of the relevant facts at trial, not

22   the form of these facts as presented in the motion, matters for purposes of a motion for summary

23   judgment. *See id.* Where "the contents of a document can be presented in a form that would be

24   admissible at trial—for example, through live testimony by the author of the document—the

25   mere fact that the document itself might be excludable hearsay provides no basis for refusing to

26   consider it on summary judgment." *Id.* (citations omitted). To the extent that the Court relies

27   upon evidence to which a party objects in deciding the motion for summary judgment, the

28   objections are overruled. To the extent the Court does not, the objections are denied as moot.

1    **B.  Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**

2        "The law implies in every contract, including insurance policies, a covenant of good faith

3    and fair dealing." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 751 (2007).  "[A]n insurer

4    may breach the covenant of good faith and fair dealing when it fails to properly investigate its

5    insured's claim." *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 817 (1979).  An

6    unreasonable delay in paying a covered claim may also support a claim for breach of contract.

7    *See United Invs. Life Ins. Co. v. Grant*, No. 2:05-cv-1716-MCE-DAD, 2006 WL 1282618, at *7

8    (E.D. Cal. May 9, 2006).  In evaluating an insurer's liability, "the critical issue is the

9    reasonableness of the insurer's conduct under the facts of the particular case." *Pinto v. Farmers

10   Ins. Exch.*, 61 Cal. App. 5th 676, 688 (2021)  (cleaned up) (internal citations omitted).  Although

11   typically a question for the jury, the reasonableness of an insurer's conduct is a question of law

12   where "evidence is undisputed and only one reasonable inference can be drawn from the

13   evidence." *Id.* at 689 (quoting *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins.

14   Co.*, 90 Cal. App. 4th 335, 346 (2001)).

15       MacPherson-Pomeroy alleges that North American breached the covenant of good faith

16   and fair dealing, and thereby breached the contract, by failing to reasonably investigate, evaluate,

17   and determine coverage for the claim.  Doc. 137 at 7.  Specifically, MacPherson-Pomeroy

18   alleges that North American knew of Casey's death by early 2019 but did not pay out its policy

19   until it was sued nearly a year later in the present action.  *Id.* at 8.  North American argues it had

20   a bona fide justification for its delay: the suspicious circumstances surrounding Casey's death in

21   a foreign country.  North American asserts that it investigated the claim out of concern it might

22   be exposed to multiple liability, given that California law prevents a beneficiary who feloniously

23   and intentionally kills the insured from collecting on an insured's life insurance policy.  *See* 134-

24   1 at 8–9; Cal. Prob. Code § 252 ("A named beneficiary of a bond, life insurance policy, or other

25   contractual arrangement who feloniously and intentionally kills the principal obligee or the

26   person upon whose life the policy is issued is not entitled to any benefit under the bond, policy,

27   or other contractual arrangement, and it becomes payable as though the killer had predeceased

28

8

1    the decedent.").

2         North American had verifiable proof of Casey's death by February 2019, when it

3    received the original death certificate from MacPherson-Pomeroy.  SUMF No. 18.  Per its

4    internal policies, because the death occurred abroad, North American then sought additional

5    information from MacPherson-Pomeroy, including hospital records, and escalated the claim to

6    include review by North American's counsel.  *Id.* No. 20.  However, to the extent North

7    American sought further confirmation that Casey had in fact died, it confirmed that fact at the

8    latest upon receipt of Diligence's report in July 2019.  *Id.* No. 26.

9         North American asserts that it continued to leave the claim open after July 2019 because

10   Diligence indicated that the Anguilla coroner was conducting an inquest.  But North American

11   does not dispute that MacPherson-Pomeroy, who was also sickened and hospitalized in the

12   incident that killed her husband and their friend, was never identified as a suspect, let alone

13   arrested or charged.  AMF Nos. 5–6.  At a minimum, there is a material dispute of fact as to

14   whether North American had a reasonable basis to suspect MacPherson-Pomeroy had any

15   involvement in Casey's death.  North American does not identify any evidence of any such

16   involvement by MacPherson-Pomeroy.  To the extent North American was nonetheless

17   concerned about the potential of multiple liability, it could have filed an interpleader action at

18   any time after July 2019, once it no longer contested liability on the policy, if it had a potential

19   concern as to the proper beneficiary.

20        North American grounds much of its argument on its asserted good faith belief that it

21   faced the possibility of multiple claims and the fact that it ultimately brought an interpleader

22   claim in a third-party complaint and counterclaim in this action.  *See generally* Doc. 143; *see

23   also Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) ("In light of

24   [insurer's] good faith belief that it faced the possibility of multiple claims, it did not act

25   unreasonably in failing to pay [claimant's] claim.").  The Court previously found that North

26   American "had a good faith belief that there [was] a colorable adverse claim to the fund" and

27   that it "satisfied the general requirements of an interpleader action."  Doc. 100 at 14.  However,

28   North American did not file the interpleader action until February 2020, nearly twelve months

1    after it received Casey's original death certificate, and seven months after it received Diligence's

2    report.  North American also brought the interpleader claim only after MacPherson-Pomeroy's

3    December 2019 filing of this action against North American for its delay in paying out on the

4    Policy.  While it is undisputed that North American had a basis to interplead the funds, the Court

5    cannot determine *as a matter of law* that North American's delay in doing so, particularly its

6    delay from July 2019 to February 2020, was reasonable.

7          At the hearing, North American stated that its decision to finally file the interpleader was

8    due to it having "exhausted all avenues" to conclusively determine whether MacPherson-

9    Pomeroy was a person of interest in Casey's death.  However, MacPherson-Pomeroy provides an

10   unopposed expert report stating that, in the life insurance industry, upon verification of death, it

11   is standard practice for an insurer to either (1) pay the claim, (2) deny the claim, or (3) interplead

12   the claim, and that North American's delay in doing so was inconsistent with industry standards.

13   *See* Doc. 137-4 at 125–40.  The evidence suggests that North American had such verification of

14   Casey's death as early as February 2019, when it received Casey's death certificate directly from

15   MacPherson-Pomeroy, and at the latest by July 2019, when it received Diligence's death

16   verification report, which corroborated the cause of death listed in the February 2019 death

17   certificate.  *See* SUMF Nos. 18, 26.  However, instead of paying out, denying, or interpleading

18   the claim, North American waited for months, even after the coroner's inquest was held in

19   September 2019.

20         North American asserts that it was unable to resolve MacPherson-Pomeroy's claim

21   because it had not received a satisfactory statement that she had no involvement in Casey's

22   death.  Doc. 143 at 6.  At the hearing, North American argued that it did not file an interpleader

23   action earlier because it was waiting to see if MacPherson-Pomeroy would be "cleared" by the

24   coroner's inquest so she could be paid directly without North American having to interplead the

25   funds.  But North American knew by September 2019 that MacPherson-Pomeroy had not

26   returned to Anguilla to participate in the inquest.  MacPherson-Pomeroy's decision not to return

27   to Anguilla to participate in the September 2019 coroner's inquest hearing does not establish that

28   North American's further months-long delay in addressing MacPherson-Pomeroy's claim was

1   reasonable as a matter of law, where North American does not claim that it had any evidence to

2   suggest MacPherson-Pomeroy was a suspect in Casey's death.  *Cf. Lee v. Crusader Ins. Co.*, 49

3   Cal. App. 4th 1750, 1759 (1996) (finding an insurer's conduct reasonable in large part because

4   the claimant was arrested).

5        There is also a material dispute of fact as to whether the thirty-day update letters sent by

6   North American to MacPherson-Pomeroy complied with California law.  *See Jordan v. Allstate*

7   *Ins. Co.*, 148 Cal. App. 4th 1062, 1077 (2007) (holding that, in an action for breach of the

8   covenant of good faith and fair dealing, a plaintiff can recover for noncompliance with the

9   minimum standards for claims resolution set forth in § 2695); *see also United Invs. Life Co. v.*

10  *Grant*, 387 Fed. Appx. 683, 688 (9th Cir. 2010) (citing evidence that insurer violated California

11  law as a basis for affirming denial of insurer's motion for new trial).  If a claim requires more

12  than forty days to resolve, an insurer "shall specify any additional information that the insurer

13  requires in order to make a determination and state any continuing reasons for the insurer's

14  inability to make a determination."  Cal. Code Regs. tit. 10, § 2695.7(c)(1).  North American's

15  letters to MacPherson-Pomeroy simply stated that her claim was "currently under review," with

16  no additional information as to what was needed to complete North American's review.  At the

17  hearing, North American noted that California law includes an exemption to this requirement

18  where "the claim is being investigated as a possible suspected fraudulent claim," *id.*

19  § 2695.7(c)(2), but North American does not point to any evidence suggesting that it relied on

20  this provision when sending its generic "review pending" notices every thirty days to

21  MacPherson-Pomeroy.[4]

22       An insurer's eventual interpleader filing does not absolve it of liability for prior

23  unreasonable delay, and an insurer's unreasonable delay may support a claim for both breach of

24  contract and breach of the covenant of good faith and fair dealing.  *See Grant*, 2006 WL

25  _____

26  [4] In cases of suspected fraud, California law extends the required timeframe to provide such
    updates from thirty to eighty days.  Cal. Code Regs. tit. 10, § 2695.7(k)(1).  The fact that North
27  American continued to issue its notices to MacPherson-Pomeroy on a thirty-day basis
    undermines its argument that it was relying on this provision in limiting the amount of
28  information it provided to her.

1  1282618, at *7.  Whether North American's delay following its confirmation of Casey's death

2  was reasonable cannot be resolved as a matter of law.  Whether MacPherson-Pomeroy is entitled

3  to attorney's fees in connection with this action will also depend on the outcome of her claims at

4  trial.  *See Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985) ("When an insurer's tortious

5  conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a

6  policy, it follows that the insurer should be liable in a tort action for that expense.").

7       Accordingly, North American's motion for summary judgment as to MacPherson-

8  Pomeroy's claims for breach of contract, breach of the covenant of good faith and fair dealing,

9  and attorney's fees is denied.

10  **C.  Punitive Damages**

11       North American also seeks summary judgment as to MacPherson-Pomeroy's claim for

12  punitive damages.  California law "does not favor punitive damages and they should be granted

13  with the greatest caution."  *Beck v. State Farm Mut. Auto Ins. Co.*, 54 Cal. App. 3d 347, 355

14  (1976).  Under California law, punitive or exemplary damages may be awarded only if "the

15  plaintiff proves by clear and convincing evidence that the defendant committed a tort with

16  oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  No evidence suggests that North

17  American acted with "oppression, fraud, or malice" in its alleged disregard for MacPherson-

18  Pomeroy's claim to the Policy.  *See Grant*, 387 Fed. Appx. at 687.  There is no evidence of an

19  intent to injure or defraud MacPherson-Pomeroy.  While a trier of fact could find that North

20  American's delay was unreasonable, no reasonable juror could find that it rose to the level of

21  egregious conduct required to award punitive damages.  Accordingly, North American's motion

22  is granted as to MacPherson-Pomeroy's claim for punitive damages.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1    **IV.    Conclusion and Order**

2          For the reasons explained above:

3          1.   North American's motion for summary judgment, Doc. 134, is GRANTED in part

4               and DENIED in part.  The motion is GRANTED as to MacPherson-Pomeroy's claim

5               for punitive damages and DENIED as to all other claims.

6

7

8    IT IS SO ORDERED.

9       Dated:   June 18, 2025
                                            _____
10                                          UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13